I'd like to reserve two minutes for rebuttal. Classifications of offenders in the sentencing guidelines must be rationally related to a legitimate sentencing purpose. Here, the challenge classification is the relative weight given to the same sentencing factor of prior conviction under two different guidelines, the guideline for illegal reentry versus the guideline for felon in possession of a firearm. Counsel, we understand your position. Did you get the 28J letter sent to us on dated April 13 about the case of United States v. Ramirez-Garcia? I did receive it. It appears to state a general policy that defendants who return to the United States after deportation should face severe sentences. It, like all of the cases cited by the government, does not address the point that I have made, which is that there is a disparate impact and an equal protection violation between the two guidelines I'm comparing. Well, there seems to be some, in Ramirez-Garcia, it says Congress has made it clear when it amended 1326 that it wished to enhance the penalties for aliens with prior convictions in order to deter others. The Sentencing Commission simply implemented the intent of Congress when it promulgated 2L1.2B, which increases the range for aliens with prior convictions. What should we do with this? Your Honor, that's a relatively old case. I believe it's 2001. Well, Marbury v. Madison is a relatively old case, too. I mean, you're not going to get us to think that we can throw this away because it was decided in this century. Well, the Court needs to focus on the issue that I've raised, which is comparing the enhancement for 1326 to the enhancement for 922G. There are a number of cases following the same vein of the case cited by the government in that letter, which is that there should be stiff sentences for illegal reentrance because it's a severe offense. Defendants who return to the United States with prior convictions should face high sentences. We do not dispute that. That case simply sets forth a policy statement stating that Congress reviewed various statistics about defendants returning to the United States after committing crimes. That case, like all the others the government has cited, did not address the fact that a defendant who has the exact same qualifying prior crime would only receive a 6 or a 10-level enhancement as compared to the 16-level enhancement that was imposed in this case. But isn't it clear from everything we take a look at, including this case, that there's a rational basis for making this distinction? Your Honor, it's unclear if Congress even considered making the distinction between these two different offenses or if the Sentencing Commission even considered the fact that what you have in the illegal reentry guideline is essentially triple the offense enhancement that you would have for 922G. What do you mean by unclear? I mean, we've talked about it, and it appears clear on its face that we're dealing with two different categories of people and that Congress, within its power to deal with immigration, upped the penalty in order to deter reentry of people like this. The government has also made the point that Congress has the power to deter immigration. Therefore, Congress has the power to impose extreme penalties that exceed penalties for basically the same enhancement under other crimes. However, the fact that Congress has plenary authority in the field of immigration does not mean that that plenary authority should carry over into the context of criminal sentencing. You know, we deal from precedent. What's the lead case that you want us to read that you believe supports your position before we finally decide the case? What's your best case that leads us in your direction? Well, on this, I have to agree with the government. There has been no case that has supported an equal protection challenge to two different guidelines. So do you have an analogous case, something generally that tells us what we're supposed to do? Yes, Your Honor. The two cases I would look to would be Backstrom v. Herald, the more general case speaking of equal protection principles and stating that the distinction made has to have some relevance to the purpose for the classification. The second case would be Plyler v. Doe, the case involving immigrant children in Texas who were denied a free education solely on grounds that they were illegal aliens. Justice Gracias, even you're saying that you think that because the guideline was higher than a 20 under 5K, 2.1A4A, that it should be equivalent to that it shouldn't be higher, right? Not exactly, Your Honor. In this case, the defendant had two qualifying priors. So let's say he had been prosecuted under the other guideline. He would have been facing a 10-level increase for having two qualifying priors. So my argument would be that the enhancement for 1326 should not exceed the 10-level increase that would apply to him. But what would his adjusted offense level have been? 18, rather than 24. It would be 8 plus 10 because you have a 10-level enhancement under the 922G guideline. Six for the first qualifying prior, 10 once you have two qualifying priors. And what would the range have been? Your Honor, I apologize. I don't have a sentencing guideline. It's criminal history category 6, right? It was 6. So he'd be on the far side of the table. And he got 54 months. Yes, Your Honor. But I would keep in mind that after Booker, the Court is still instructed to calculate what the sentencing guidelines are. So in this case, if the Court had agreed or felt the ability to agree that there wasn't equal protection concern, the Court would have been starting at a lower point on the basis of the mitigating factors. Chief Judge Schroeder has any questions? You've made your case very clearly. Why don't we? Can I just ask one question? Sure. Is your challenge solely to the sentencing guideline or is it also to the statute? Solely to the sentencing guideline. Okay. Thank you, Your Honor. Thank you, counsel. We'll let the other side respond and give you some opportunity to answer. Good morning, Your Honors. May it please the Court. Erica Frick on behalf of the United States. There's no merit to the Defendant's Equal Protection Clause claim for two reasons. First, the defendants being compared are not similarly situated. These are two very different offenses and the punishments really can't be compared. So we have the Cardenas-Alvarez case that talks about the fact that under the illegal reentrance with aggravated felonies are treated equally. Secondly, even if these were similarly situated defendants, there's much more than a rational basis here for treating the two offenses and the two types of defendants differently due to Congress's very strong interest in deterring illegal aliens with a serious criminal history from reentry in this country. And the Adelphi case from the Eleventh Circuit squarely rejected the argument that's at issue here. There they were comparing this illegal reentry guideline to the guidelines generally, which most of the guidelines for American citizens only count the prior convictions in the criminal history and not also in the offense level. So that was even more serious disparities at issue in Adelphi case. Counsel on the other side, sir, of course, says that the Adelphi case is completely irrelevant and inapposite. Your answer to that is what? My answer to that is that Adelphi actually encompasses this situation here. It's actually broader than the holding necessary in this case. So in that case, the argument was that there was an irrational distinction between aliens with prior felony convictions and citizens with prior felony convictions. That is, again, under the guidelines for most offenses, for a citizen, you'll only look at the prior convictions in the criminal history calculation, whereas for both the firearm guideline and the reentry guideline, you also consider it in the offense level. So for other offenses, you wouldn't consider it at all in the offense level. But still the Adelphi case held that that disparity, which is even greater than here, was constitutional because of Congress's very strong interest in deterring these criminal aliens from coming back into the country. Do you have anything else? Unless there are any further questions, the government would ask that the Court affirm. Chief Judge Roder, any questions? Is this do you agree this is an issue of first impression in this circuit? In this circuit on this precise issue, yes, it is. Thank you. Thank you, counsel. Thank you, Your Honor. You have time to respond. Thank you, Your Honor. The government makes the point that or the argument that 1326 is somehow a more severe offense, but I think we can look to the guidelines themselves to see the starting point indicates that illegal reentry is considered slightly less serious. The base offense level for illegal reentry is 8. A defendant with any qualifying prior felony that would not be an aggravated felony starts at 12 versus. But isn't the point that there's illegal immigration by violent felons or felons of serious aggravated felonies is considered by the Sentencing Commission and is a very serious problem and that's why there's a 16 level increase because they want to deter those people who have been deported and now would come back and commit further violent crimes or drug offenses, sex offenses, the types of things that result in a 13 level increase that that's what they want to deter and that they've made a decision that that is a serious problem in the gradient of things more serious than the other one that you mentioned about and therefore that's the 16 level increase. Certainly, Your Honor. But particularly in the political climate that we have today, for example, I think the Court needs to guard against the sort of invidious discrimination that Flyler v. Doe was speaking to. So the issue is not merely does this crime deserve a severe sentence. I think it is appropriate to conduct the kind of comparison that I'm doing and to raise questions about why there are these very unusual consequences for defendants under this guideline alone. A DELQI does not involve a comparison between the gun guideline and the illegal reentry guideline. That isn't the reason because they want to tell people who have been convicted of rape or homicide offenses like manslaughter or serious drug offenses or crime like robbery, crimes of violence like that, and they now get deported, they want to say those people stay away from here. If you come, we're going to throw the book at you. Isn't that essentially what they're saying? Certainly, but I would ask the Court if we're talking about a public safety issue, who poses a more severe threat? An alien like my client who came back with a qualifying prior from 1995 or a defendant who's possessing a gun and has a qualifying prior? But that's a decision that's to be made by Congress, not the judicial branch. However, the Court can conduct a review to determine if there is a rational reason for the distinctions that are drawn. And on this issue ---- Is there anything in the record to indicate that there are more crimes or even close to the number of crimes committed by illegal aliens with guns as opposed to illegal aliens who come back and commit other, further offenses? Do you have any statistics? I don't believe we have any statistics in this record, Your Honor. I would like to make one more point about the distinction between these two guidelines. It's a very odd result. Under the 922G guideline, there is a 10 or a 15-year cutoff incorporated so that a defendant who possesses a gun and his qualifying prior is more than 10 years old or more than 15 years old, he is not going to face the 6 or the 10-level enhancement. However, that cutoff is not incorporated into the 1326 guideline. So a defendant who returns with a qualifying prior, even where what we're seeing would be rehabilitation, no serious offense within 10 or 15 years, is still facing the severe increase that is not imposed under the gun guideline. But wasn't that, before Booker, wasn't that one of the basis for departures that the 16-level increase, the United States said you could depart off that because of the type, if it was a small drug sale, so to speak, or if it was a long time ago, you could depart on that ground, right? That was built into the guidelines. Certainly. But I think a defendant would be in a much better position if the starting point were lower because the Court was able to recognize that there is a 10 to 15-year cutoff that should be incorporated into the 1326 guideline. That was another issue I raised that was not considered persuasive by the Court because there have been no rulings in this area by the Ninth Circuit. No offense meant to Congress, but there's an old saying that foolish inconsistency is the hobgoblin of the small minds. And that is the place of the courts to step in. So Congress does not have a small mind, I guess. Anything else, Counsel? No, Your Honor. All right. We thank you both very much for your argument. The case of United States v. Reese Charas is ordered submitted.
judges: Schroeder, Trott, Moskowitz